[909 NYS2d 880]

Pacnav S.A., Petitioner, v Effie Business Corp. et al., Respondents.

Supreme Court, New York County, September 10, 2010

**APPEARANCES OF COUNSEL**

*Lennon, Murphy, Caulfield & Phillips, LLC*, New York City, for petitioner. *Kennedy Lillis Schmidt & English*, New York City, for respondents.

### OPINION OF THE COURT

SALIANN SCARPULLA, J.

In this special proceeding, petitioner Pacnav S.A. (Pacnav) seeks, pursuant to CPLR 7502 and 9 USC §§ 1 and 9, an attachment of respondents Effie Business Corp.'s and Antun Hermanos' (EBC) property and/or assets in New York, a temporary restraining order in aid of the arbitration proceedings pending between the parties in New York, and enforcement of an arbitration award.

Pacnav, a Mexican corporation, was the disponent owner[1] of the *M/V Atlantis Charm* (the vessel). In or around November 2005, EBC chartered the vessel to carry a cargo of wheat from the United States to the Dominican Republic. After completion of the shipment, Pacnav claimed it was owed demurrage from EBC.[2]

EBC asserts that it paid $69,982.45 to Pacnav for demurrage, and that Pacnav then sought an additional $55,525 for demurrage which it claims it is owed under an unsigned charter party contract.[3] EBC disputes the charges claimed by Pacnav, and instead argues that it overpaid the demurrage.

The charter party contract includes an arbitration provision, pursuant to which Pacnav served EBC with a demand for arbitration to recoup the additional demurrage amount. EBC, believing it already overpaid the demurrage, did not consent to the demand. Pacnav went forward with the arbitration, and appointed an arbitrator, as provided in the charter party arbitration provision. EBC did not appoint its arbitrator.

In or around November 2006, Pacnav filed a petition in the United States District Court for the Southern District of New York (District Court) to compel arbitration under the Federal

---

1. A disponent owner of a vessel has control over the vessel's commercial operations but does not own the ship itself. (*See Icdas v Travelers*, 2009 NY Misc LEXIS 3650, *3 [Sup Ct, NY County 2009].)

2. Demurrage is,

"[i]n maritime law, the sum which is fixed by the contract of carriage, or which is allowed as remuneration to the owner of a ship for the detention of his vessel beyond the number of days allowed by the charter-party for loading and unloading or for sailing. Also the detention of the vessel by the freighter beyond such time." (Black's Law Dictionary [6th ed].)

3. A charter party contract is "[a] contract by which a ship, or some principal part thereof, is let to a merchant for the conveyance of goods on a determined voyage to one or more places." (Black's Law Dictionary [6th ed].)

Arbitration Act (9 USC § 1 *et seq.*) (the District Court action).[4] Pacnav also filed a verified complaint under rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (rule B), seeking an ex parte order of maritime attachment.

According to the parties' submissions,[5] the District Court compelled arbitration and issued an order of attachment, allowing Pacnav to attach $80,202.53 of what was believed to be EBC's property in the form of electronic funds transfers (EFTs) at intermediate banks Bank of America and Wachovia Bank. In so doing, the District Court exerted quasi in rem jurisdiction over EBC based on its property (the EFTs) within the district. Once compelled to do so, EBC participated in the arbitration.

While the arbitration was proceeding, the U.S. Court of Appeals for the Second Circuit issued two decisions, *Shipping Corp. of India Ltd. v Jaldhi Overseas Pte Ltd.* (585 F3d 58 [2d Cir 2009]) and *Hawknet, Ltd. v Overseas Shipping Agencies* (590 F3d 87 [2d Cir 2009]), which interpreted New York law to find that EFTs processed at intermediate banks are not subject to rule B attachment, and therefore were not a valid basis for the court's exercise of jurisdiction.[6]

In an e-mail message dated April 27, 2010, the chairman of the arbitration panel informed counsel for Pacnav and EBC that it has "reviewed [EBC's] letter of March 15, 2010, with it's [*sic*] attached motion for a stay of Complainant's motion for an order of security." The chairman further states that the "panel has been awaiting a promised reply from [Pacnav], but it has not been forthcoming." The chairman further stated that the panel would be able to make a determination without further documentation. The e-mail indicates that the panel denied the motion to stay and ordered EBC

> "to provide security to the Atlantis Charm in the amount of $80,202.53. However this order not be operable [*sic*] until, and unless, the Rule B Attachment is lifted. While Effie Business Corp[.] may pos-

---

**4.** *See Pacnav S.A. v Effie Bus. Corp.*, SD NY, 06 Civ 13512 (KJL).

**5.** Neither party submitted papers or decisions from the District Court action, but both provide similar accounts of the procedural history before the District Court. Accordingly, the court relies on their representations for purposes of this proceeding.

**6.** "Because EFTs in the temporary possession of an intermediary bank are not property of either the originator or the beneficiary under New York law, they cannot be subject to attachment under Rule B." (*Jaldhi*, 585 F3d at 71.)

sibly have entered Arbitration solely as a result of the court's ruling, Effie Business Corp[.] is obligated by the contract terms of the Charter Party to arbitrate disputes arising thereunder, and so defendant has done nothing more than it is, and was, legally obligated to do in entering this arbitration."

The chairman then directed the parties to arrange for security for the arbitrators' fees in the amount of $10,000 each, to be payable to an escrow account. The e-mail message from the chairman concludes as follows: "The panel feels it has sufficient documentation on which to deliberate and render an award, and that Counsel should be able to permit the panel [to] close the proceedings, and get on to our decision."

Subsequent to the *Jaldhi* and *Hawknet* decisions, the District Court issued Pacnav an order to show cause why the maritime attachment should not be vacated and the case dismissed. (*See Pacnav S.A. v Effie Bus. Corp.*, 2010 WL 2102714, 2010 US Dist LEXIS 49966 [SD NY 2010].) The District Court found that "the attached funds fall within the scope of *Jaldhi* and *Hawknet* and do not provide a basis for jurisdiction over the defendants in this case." (*Pacnav*, 2010 WL 2102714, \*1, 2010 US Dist LEXIS 49966, \*1-2.) The District Court found Pacnav's argument that the attachments should be maintained because the arbitration panel ordered EBC to provide security while Pacnav's claims were pending before the panel unavailing. The District Court held that

"the issue of security on the plaintiff's claims before the arbitration panel is a matter between the parties and the arbitration panel. The status of the dispute before the arbitration panel does not affect whether this Court has jurisdiction over the defendants or the power to maintain the attachment in this case under *Jaldhi* and *Hawknet*." (*Pacnav*, 2010 WL 2102714,\*1, 2010 US Dist LEXIS 49966, \*2.)

The District Court concluded that

"[b]ecause the attachment in this case is invalid pursuant to *Jaldhi* and *Hawknet*, and because the defendants did not consent to personal jurisdiction, nor forfeit their personal jurisdiction defenses, there is no basis for jurisdiction over the defendants and the attachment must be vacated and the Complaint dismissed without prejudice." (*Pacnav*, 2010 WL 2102714, \*2, 2010 US Dist LEXIS 49966, \*5.)

On or around May 27, 2010, Pacnav initiated this special proceeding, by order to show cause with an accompanying peti-

tion, seeking: (1) to temporarily restrain the removal of EBC's property from Bank of America and Wachovia Bank; (2) an order of attachment against EBC's property (the EFTs) located at Bank of America and Wachovia Bank; and (3) an order recognizing and confirming the arbitrators' interim award as a judgment of this court.

In support of its petition, Pacnav argues that the arbitration panel's decision of April 27, 2010 (which Pacnav refers to as the final interim award) should be confirmed and enforced pursuant to CPLR 7510 and 7502 because it is a "final and binding award rendered in arbitration in New York City pursuant to a binding arbitration agreement entered into between the parties." Pacnav further argues that it is entitled to an order of attachment as it is seeking to enforce an arbitration award against a foreign corporation, and such award will be "rendered ineffectual without attachment order." In addition, Pacnav asserts that this court has personal jurisdiction over EBC pursuant to the arbitration provision in the charter party contract.

In opposition, EBC argues that pursuant to CPLR 7502 this court only has authority to hear the "first application arising out of an arbitrable controversy." In addition, EBC argues that this proceeding is barred by the doctrine of collateral estoppel. Lastly, EBC argues that the EFTs Pacnav is attempting to restrain are not EBC's property, pursuant to the District Court's decision in *Jaldhi* and *Hawknet*, and therefore may not be attached.

## Discussion

CPLR 7510 provides that the "court shall confirm an award upon application of a party made within one year after its delivery to [it], unless the award is vacated or modified upon a ground specified in section 7511."

> "But before the court may intervene or even entertain a suit seeking court intervention, there must be an 'award' within the meaning of the statute. The 'awards' of arbitrators which are subject to judicial examination under statute—and then only to a very limited extent—are the final determinations made at the conclusion of the arbitration proceedings. Generally, the award is the arbitrators' decision and final determination upon the matters submitted and must be coextensive with the submission." (*Mobil Oil Indonesia v Asamera Oil [Indone-*

*sia]*, 43 NY2d 276, 281 [1977] [citations omitted].)

Here, Pacnav seeks enforcement and confirmation of what it calls the arbitrators' final interim award, which came in the form of an e-mail message from the chairman of the arbitration panel, dated April 27, 2010, and which ordered EBC to post security. It is self-evident that an award is either final or interim, and cannot be both. Upon review of the chairman's April 27, 2010 e-mail message, it is clear that it is not a final arbitration award. First, the chairman's e-mail message does not address the ultimate issue before the panel, but rather denies EBC's motion for a stay, and then addresses posting funds as security and in escrow for potential arbitrators' fees. Additionally, within the message, the chairman states: "The panel feels it has sufficient documentation on which to deliberate and *render an award*, and that Counsel should be able to permit the panel [to] *close the proceedings, and get on to our decision.*" (Emphasis added.) By using this language, the chairman makes clear that the final decision and award is yet to be issued.

Second, the claim that this is a final award to be confirmed is belied by Pacnav's own submissions. Annexed to its affidavit in support of the petition, Pacnav submits its letter to the arbitration panel dated May 27, 2010 (the same date as this order to show cause and petition). In this letter, counsel for Pacnav seeks (1) to revise the amount of the claim it is seeking, and request an increased order of security for its claim, in the form of a "supplemental interim award"; (2) punitive damages; and (3) to strike EBC's submissions and deny EBC's counterclaims. Moreover, in this letter Pacnav indicates its concern that EBC's "application in the federal court to remove from the jurisdiction security obtained by Pacnav which might serve as the *res* to satisfy a *forthcoming award*." (Emphasis added.)

Pacnav concludes this letter to the panel by stating: "Pacnav respectfully requests that the Panel consider the foregoing as promptly as possible and *proceed to issue a decision and award* on Pacnav's substantive clams [*sic*] . . . and to grant all of their relief requested herein." (Emphasis added.) In its letter, Pacnav makes clear to the panel (and any subsequent reader) that the final arbitration award has not yet been determined.

In sum, the April, 27, 2010 e-mail message from the panel chairman "in no way constitutes a final determination on the matters submitted and therefore there is no authority for judicial intervention." (*Mobil Oil Indonesia*, 43 NY2d at 281; *see also Matter of JJF Assoc., LLC v Joyce*, 59 AD3d 296, 297

[1st Dept 2009] [rejecting "improper appeal of a nonfinal (arbitration) decision"].) Accordingly, the petition to confirm is denied.

Additionally, Pacnav's request to attach EBC's EFTs in aid of enforcement of a final arbitration award is denied as moot as there is no final arbitration award.[7]

In accordance with the foregoing, it is hereby ordered that the petition by petitioner Pacnav S.A. seeking confirmation of the April 27, 2010 interim order of the arbitration panel is denied; and it is further ordered that any restraints on Effie Business Corp.'s and Antun Hermanos' property and/or assets in New York, including electronic funds transfers at Bank of America and/or Wachovia Bank be lifted.

---

7. Were this request not moot, it would be barred by collateral estoppel, which precludes a party from relitigating an issue that was already raised and necessarily decided against that party in another action. (*See Tydings v Greenfield, Stein & Senior, LLP*, 43 AD3d 680 [1st Dept 2007]; *Color by Pergament v O'Henry's Film Works*, 278 AD2d 92 [1st Dept 2000].) In the District Court action, whether or not the EFTs were "property" within the district was squarely addressed, and the court found that the EFTs fell within *Jaldhi* and *Hawknet* and were therefore not subject to an order of attachment.